## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 29 2020, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer A. Joas
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Cole Hornsby,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

June 29, 2020

Court of Appeals Case No.
20A-CR-85

Appeal from the Dearborn Circuit Court

The Honorable James D. Humphrey, Judge

Trial Court Cause No.
15C01-1804-F5-30

**Brown, Judge.**

[1] Cole Hornsby appeals his sentence following the revocation of his probation. We affirm.

*Facts and Procedural History*

[2] On April 18, 2018, the State charged Hornsby with: Count I, carrying a handgun without a license on or in school property as a level 5 felony; Count II, maintaining a common nuisance as a level 6 felony; and Count III, possession of marijuana as a class B misdemeanor. On February 1, 2019, the court approved a plea agreement in which Hornsby pled guilty to Count I, carrying a handgun without a license as a level 5 felony, and the State agreed to dismiss the remaining counts as well as cause number 15D02-1901-CM-29 and recommend a sentence of four years with three years and ninety-five days suspended. The plea agreement provided that Hornsby shall obey all conditions of probation attached as Exhibit A, which provided in part: "You must not commit another criminal offense. If you do commit another criminal offense, your probation may be revoked." Appellant's Appendix Volume II at 52. The court accepted the plea agreement, sentenced Hornsby to the Department of Correction for four years with three years and ninety-five days suspended, and ordered that he shall obey all conditions of probation set forth in Exhibit A attached to the plea agreement.

[3] On September 13, 2019, a probation officer filed a Request for Probation Violation Hearing alleging Hornsby committed a new criminal offense, invasion of privacy as a class A misdemeanor on or about June 23, 2019. On November 21, 2019, the probation officer filed an Amended Request for

Probation Violation Hearing alleging Hornsby committed another criminal offense of invasion of privacy as a class A misdemeanor on or about September 12, 2019.

[4]   On November 25, 2019, the court held a hearing, and the prosecutor stated that the request for probation violation hearing should state Hornsby committed invasion of privacy on October 12, 2019, instead of September 12, 2019. The court admitted a protective order dated February 28, 2019, indicating it expired on February 8, 2021, and prohibiting Hornsby from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with Lindsay Packer. Dearborn County Sheriff's Deputy Craig Elliott testified he received a complaint from Packer that she was at a bar in Harrison, Ohio, noticed Hornsby at the same bar, and received a text message the next day on June 23, 2019, that was a "third-party communication from Mr. Hornsby that identified them self [sic] to be an Ian Hornsby," who Deputy Elliott learned was Hornsby's cousin. Transcript Volume II at 10. The text message states:

> Hey this is Ian Hornsby, and [I] just wanted to let you know that
> [C]ole said if you don't drop the protective order by the end of
> the week, he's going to hire a lawyer and take you to court over
> it. He said he'll leave you completely alone, but the protective
> order will be dropped one way or another, because it's
> completely unnecessary.

State's Exhibit 3. Deputy Elliott indicated he spoke with Ian who told him that he was with Hornsby on the 22nd, denied sending the message to Packer, and stated he had no idea who Packer was. Deputy Elliott completed a probable

cause affidavit related to the charge of invasion of privacy which stated in part: "Your [affiant] was told by Packer that she and Hornsby had never been in a relationship and that she was just being followed and stalked by Hornsby. Your affiant read reports that stated previously Packer had to be escorted through school because she was in fear of Hornsby." State's Exhibit 1. He testified that Packer disclosed that she believed Hornsby communicated with her since the filing of the charge in a text message on October 12th that stated: "Jesus Christ." Transcript Volume II at 16-17; State's Exhibit 4. Hornsby's counsel indicated that Hornsby would admit that he sent this message.

[5] Packer testified she knew Hornsby from high school but was not his friend and that he had nonconsensual contact with her in the form of phone calls and appearing at places where she was located. She indicated she told Hornsby to leave her alone plenty of times, but he continued to contact her and changed his number so he could continue to contact her. She testified "it started about in 2016 in high school" during her junior year and Hornsby would say "weird things" to her which made her feel uncomfortable. Transcript Volume II at 27. When asked by the court if she was telling it that "this has gone on for almost three years," Packer answered affirmatively. *Id.* When asked what she meant by "weird things," she stated that Hornsby called her a "bad b----" and an "effing b----," screamed at her, and tripped her in the hallway. *Id.* On November 27, 2019, the court resumed the hearing and found that the State had presented sufficient evidence to prove the allegations of the petition.

[6] On December 4, 2019, the court held a sentencing hearing. Hornsby's father stated that Hornsby was very intelligent and he was, at one point, concerned his son was using drugs, but Hornsby "turned out to be clean." *Id.* at 44. Hornsby said: "I would just like to say to the victim that I love her, and I apologize if I was ever offensive or caused you to be uncomfortable." *Id.* at 46. Probation Officer Jennifer Benson testified that Hornsby's brother called her on September 13th and told her that Hornsby was "saying crazy things," wanted his guns, argued with him, and Hornsby "had hurt the cat and killed the cat." *Id.* at 48. Packer's mother testified regarding Hornsby's behavior and her and her husband's concern for Packer's safety. The prosecutor read a letter from Packer which stated in part:

> Since the protective order, he has shown up where I'm at, texted me in a way that I perceived as threatening, and he even texted me from the jail. I just really want to live my life without worrying about him being around every corner. I have lived in fear and so has my family.

*Id.* at 57. When asked by the court for argument, Hornsby's counsel stated: "Your Honor, there's a long history that we've heard. However, to remind the Court that there's two particular issues with regards to probation, and we'd like the Court to keep that in mind." *Id.* at 58.

[7] The court stated that "there's lots of disturbing things about what I've heard here today and on previous occasions," it "heard evidence here today of this obsessive behavior, compulsive obsessive behavior," it "observed Mr. Hornsby smiling and snickering as [Packer] was testifying in the courtroom," and "[t]he

other thing that may be most disturbing of all is that when given the opportunity, it is his right to have the statement of allocution, he made it, and in spite of all these things, he says, 'I love her.'" *Id.* at 61-65.

[8] The court ordered that the remaining suspended sentence be revoked. The court's order states in part:

> Among the circumstances considered by the Court in making this decision are the following:
>
> 1. The Defendant is on probation for possessing a firearm on school property.
>
> 2. That Defendant carried on an obsessive and continuous pattern of unwanted contact toward the victim over a period of years. This included, while the victim and Defendant were attending high school together. Contact continued and included up to 80 attempted telephone contacts while Defendant was incarcerated at the Dearborn County Law Enforcement Center. Defendant attempted personal contact. Defendant even attempted contact during the pendency of this case.
>
> 3. The fact that Defendant used threatening language in a text message to the victim indicating that ". . . the protective order will be dropped one way or another . . .".
>
> 4. Court considers the letter submitted to the Court on or about September 13, 2019, shortly before the probation violation was filed in this case. In this letter, Defendant demanded that the Court return his firearms to him in spite of his Felony conviction and the Court's previous order. Considering this letter in the context of Defendant's obsessive behavior and other evidence regarding his desire to obtain firearms, the Court finds this is an indication of extreme danger.

5. Court also considers Defendant's statement of allocution. Defendant used this statement to express a "love" for the victim, which further confirms his obsessive behavior.

6. Court also considers Defendant's behavior during victim's testimony at the Fact-Finding Hearing, in which the court observed him smiling and laughing.

7. Based upon these facts and circumstances, and other evidence presented at the Fact-Finding Hearing, the Court finds that the Defendant has deliberately violated his terms and conditions of probation, that he has no intention of following rules and conditions of probation and that he poses an extreme danger to the victim and to the community.

Appellant's Appendix Volume II at 65-66.

## *Discussion*

[9] Hornsby concedes that he violated his probation by committing an additional criminal offense but asserts his violation did not warrant a revocation of his entire suspended sentence. He asserts that he was not on probation for "anything having to do with" Packer, he was only nineteen years old when he violated his probation, and reports from his father and brother that his behavior was unexpected suggests he was exhibiting mental health issues. Appellant's Brief at 11. The State contends that Hornsby waived any argument regarding his mental health because he did not raise it below and the trial court was well within its discretion to revoke the balance of his sentence because he committed two new criminal offenses while on probation and presented a danger to Packer and the community.

Ind. Code § 35-38-2-3(h), which sets forth a trial court's sentencing options if the court finds a probation violation, provides:

> (h) If the court finds that the person has violated a condition at any time before termination of the period, and the petition to revoke is filed within the probationary period, the court may impose one (1) or more of the following sanctions:
>
> > (1) Continue the person on probation, with or without modifying or enlarging the conditions.
> >
> > (2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.
> >
> > (3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

We review trial court probation violation determinations and sanctions for an abuse of discretion. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013) (citing *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007)). The Indiana Supreme Court has explained that "[o]nce a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed" and that "[i]f this discretion were not afforded to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation to future defendants." *Prewitt*, 878 N.E.2d at 188. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

The record reveals that the court initially sentenced Hornsby for carrying a handgun without a license as a level 5 felony to four years with three years and

ninety-five days suspended. The evidence indicates Hornsby violated the protective order and committed invasion of privacy in June 2019 and again in October 2019. We note that Hornsby's communication with Parker in October 2019 occurred after the initial Request for Probation Violation Hearing was filed on September 13, 2019. Given the circumstances and in light of the record, we cannot say that the trial court abused its discretion in revoking Hornsby's probation and ordering that he serve the remainder of his previously-suspended sentence.

[13] Affirmed.

Najam, J., and Kirsch, J., concur.